IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KIM E. CRUM,

      Petitioner,

  vs.

RAY ROBERTS, et al.,

      Respondents.

CIVIL ACTION
No. 09-3169-JWL

**MEMORANDUM AND ORDER**

This matter comes before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, proceeding pro se, challenges the validity of his conviction of murder in the first degree.

**Background**

*Procedural history*

Petitioner was convicted in the District Court of Sedgwick County, Kansas, of murder in the first degree in violation of K.S.A. 21-3402(a). He is serving a term of life without parole for fifty years. The Kansas Supreme Court affirmed his conviction, *State v. Crum*, 184 P.3d 222 (Kan. 2008). Petitioner timely filed this action.

*Factual background*

The Kansas Supreme Court summarized the facts as follows:

In the early morning of January 1, 2005, [John] Neal died of multiple blunt force and sharp force injuries. ...

Tamara Fainter lived in a triplex with her teenaged son, Colby Carson, and a daughter. Her boyfriend, Crum, was a frequent overnight guest. For a few weeks prior to the murder, Fainter had occasionally permitted Neal, who was homeless, to sleep on her couch. Often, Neal would arrive at Fainter's residence in an intoxicated condition which made him loud and talkative. If the other inhabitants were trying to sleep, they would admonish Neal to be quiet. Sometimes, Neal would take offense...and leave the house for another friend's house or to pass out in the yard or in Fainter's car.

Fainter and Crum attended a New Year's Eve party, returning home early in the morning of the murder. Fainter testified that she was drunk and passed out. Carson arrived home later from another party. Subsequently, Neal appeared and began "preaching" to Carson, who responded by yelling at Neal to be quiet. The ruckus awakened Fainter, albeit she remained in bed. Neal eventually left the house.

According to Fainter and Carson, Crum got dressed and went outside shortly after Neal's departure. Later, the two heard yells or screams and went outside to investigate. Some time later, they observed Crum, ostensibly in possession of a piece of wood or handle. Carson said Crum went inside Fainter's house, then exited to walk toward an abandoned house next door.

Fainter then took Carson to the home of a friend, Jaimie Brown, but Carson soon returned home. Brown and her mother, Tami Spann, eventually came to the Fainter residence, and Spann purportedly discovered Neal's body in back of the adjacent abandoned building. Spann then returned inside the Fainter residence and confronted Crum, accusing him of the murder.

The police were called, but when they arrived,

Crum hid in the attic for a time. A wooden handled hammer was located under a tree some distance from the site of the murder. DNA from the hammer matched Neal's DNA. Also, Neal's DNA was contained in blood and matter found on Crum's shoe. Crum told the police that he went to bed after the party and slept through the entire ruckus, and that his shoe was contaminated when he later went out to observe Neal's body. At the police station, Crum asked an officer how long the sentence was on a murder case.

>Ultimately, a jury convicted Crum of the first-degree premeditated murder of Neal, and Crum received a hard 50 life sentence. *State v. Crum*, 184 P.3d 222, 226-27 (2008).

Additional facts are incorporated in the discussion of the issues.

## Discussion

**Standard of review**

This matter is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, a federal court may grant habeas corpus relief to a state prisoner on a claim adjudicated on its merits by a state court only if (1) the state court's adjudication was contrary to or an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, or (2) the adjudication was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). The habeas court will presume that the state court's determination

of factual issues is correct; the petitioner may rebut that presumption by clear and convincing evidence.  28 U.S.C. §2254(e)(1).

**The issues**.

The petition asserts the following grounds for relief:

1. The Kansas Supreme Court acted unreasonably in upholding petitioner's conviction where a photograph of a washing machine containing red liquid was admitted without foundation and the trial judge refused to provide an explanation after the jurors submitted a question concerning the photo.

2. The Kansas Supreme Court acted unreasonably in finding that prosecutorial misconduct did not warrant overturning petitioner's conviction where the prosecutor attacked the defense counsel's competency and asked the petitioner opinion questions he was not qualified to answer.

3. The Kansas Supreme Court acted unreasonably in upholding the trial court's denial of petitioner's motion to change counsel.

4. The Kansas Supreme Court acted unreasonably in upholding petitioner's conviction despite finding trial errors occurred.

**Analysis**

**1. Admission of photograph.**

At trial, the prosecution moved to admit a group of photographs following its opening statement and before any testimony was offered.  There was no objection, and the trial court admitted exhibits 1 through 22.  State Exhibit 22 showed

a washing machine containing red liquid.  There was no testimony concerning that photograph, and the photograph, though not published to the jury during trial, was provided to the jury when it began deliberations.  Thereafter, the jurors asked the trial court for an explanation of its significance, and specifically, whether the liquid was blood, if so, whether it was tested, whether the machine was located at the Fainter residence, and whose clothing was in the machine.

The trial court advised the jurors that it could provide no guidance and that they must determine the weight and credit to be given to the photograph.  (R., Vol. IX., pp. 2-3.)

On direct appeal, petitioner alleged the trial court failed to properly respond to the jury question concerning the photograph.  The Kansas Supreme Court found the photograph had been admitted without objection and was properly given to the jury.  It found the trial court's response to the jury's question was appropriate, as the jury had been instructed that it was to determine the weight and credit to be given to the evidence.  Finally, the Kansas Supreme Court rejected petitioner's argument that the trial court should have withdrawn the photograph and ordered the jury to disregard it. *State v. Crum*, 184 P.3d at 155-56.

To the extent petitioner now challenges the admission  of

Exhibit 22 at trial, his claim is barred due to his failure to present that claim to the Kansas Supreme Court.

An "'[a]nticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." *Anderson v. Sirmons,* 476 F.3d 1131, 1140 n. 7 (10th Cir. 2007) (quoting *Moore v. Schoeman,* 288 F.3d 1231, 1233 n. 3 (10th Cir. 2002)).

To avoid this bar, petitioner must establish either "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The element of cause requires petitioner to demonstrate "that some objective factor external to the defense impeded ... efforts to comply with the state procedural rules." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner also must establish that he was subjected to "'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). In the alternative, petitioner may establish a fundamental miscarriage of justice by showing that he is "actually innocent" of the crime. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

Petitioner has made no showing to excuse this procedural bar, and the court therefore has considered only the issue

determined by the Kansas Supreme Court, namely, that the trial court failed to properly respond to the jury question concerning the photograph.

The Tenth Circuit has held that a claim regarding a trial court's response to a jury question during deliberations is a matter of state law and is generally not cognizable on habeas review. *Garrion v. Saffle,* 5 Fed. Appx. 823, 825 (10th Cir. 2001). Having considered the record, this court finds no violation of constitutional dimension. The trial court gave the correct response to the jury question by advising jurors that they must determine the weight and credit to be assigned to the evidence, and it made this response in the presence of petitioner and his counsel.

Finally, to the extent petitioner contends the trial court should have sua sponte withdrawn the photograph, he offers no authority for that position and has not shown that the ruling of the Kansas Supreme Court was contrary to clearly-established federal law.

**2. Prosecutorial misconduct**.

Petitioner next claims the Kansas Supreme Court erred in upholding his conviction despite prosecutorial misconduct during trial. In particular, he points to the prosecution's cross-examination of the petitioner and to remarks in closing

argument.

On appeal, the petitioner cited the following testimony:

> Q. You heard Colby testify, saying that he himself came home at three or 4:00 a.m.; is that right?
> A. That's correct.
> Q. Then you also heard that when he talked to officers he might have said two or 3:00 a.m., right?
> A. Yes, I heard that.
> Q. That's not really a big deal, is it?
> A. To me, it's not. Colby was never there as far as I know.
> Q. I mean, mixing up three or 4:00 a.m. or two or 3:00 a.m., really no big deal, right?
> A. That's correct.
> Q. Doesn't really affect this case at all, does it?
> A. It doesn't affect me. I told ya I was asleep, I don't know what time Colby came home.
> Q. But you yourself could, you know, easily say three or 4:00 a.m. to somebody and say two or 3:00 a.m. another time and it wouldn't be that important, would it?
> A. Yeah, it would be important. I'm the one on trial here, not Colby.
> Q. So it's important to you now in this case?
> A. That's correct. (R., Vol. VIII, p. 149.)

Later during cross-examination, the prosecutor asked petitioner the following questions:

> Q. To beat someone on the side of the building and then drag them around back and continue to beat the, that means somebody really thought about it, doesn't it?
> ....
> A. If that's what took place, if he was beat on both places, yeah, and then drug somewhere, yeah, it had to been put some thought into it.
> Q. They put thought into it and they wanted to - they wanted him to die?
> A. I can't answer what they wanted him to do. I can tell you what I didn't do so -

8

(R., Vol. VIII, p. 151.)

Petitioner contends the prosecution's questioning improperly shifted the burden of proof to him by asking him to comment on whether inconsistency in statements by a witness was important and by asking him whether the evidence suggested premeditation in the murder.

The Kansas Supreme Court held that the questioning concerning inconsistent statements given by Colby was improper, as it required one witness to comment upon the credibility of another, thereby invading the province of the jury. However, in light of the petitioner's responses, it concluded "beyond a reasonable doubt ... the questioning did not change the result of the trial." *State v. Crum*, 184 P.3d at 229.

Likewise, the Kansas Supreme Court determined the prosecutor's questions concerning whether the evidence showed premeditation were improper because they were argumentative, beyond the competence of the witness, and within the province of the jury. The court found, however, that any prejudice was mitigated by the responses given by the petitioner and concluded the error did not require reversal. *Id*.

Finally, petitioner claims there was prosecutorial misconduct during closing argument. At closing, the defense argued:

There are inconsistencies that are huge. Now, you

9

see the pictures of the body and you see the size of
my client and you see the size of Colby [Carson].
Who could have beaten him to death and dragged the
body around the back?  That's what you have to de-
cide." (R., Vol. VIII, p. 217.)

In rebuttal, the prosecutor argued:

"You know, defense counsel can sit here and he can
ridicule these people as much as he wants, he can use
his little voices and say they said this, they said
that, he can talk about them taking six steps and he
can talk about them taking 10 steps.  What he wants
to do is he wants to belittle these people, he wants
you to decide if I put myself in their shoes, which
ladies and gentlemen, I'm not asking you to do, are
they doing things that are stupid, are they being
ridiculous.  He's berating them.  Nobody would be
stupid enough to go back to where a killer is and
yell at him, nobody would be stupid enough to try to
keep the person they love from going to prison.

"Well, ladies and gentlemen, Tami Spann was on that
stand and do you believe for a second that she wasn't
actually gonna go in there and confront him?  You saw
her, she was gonna do it.  And what's more, is that
when he got on the stand he sat there and he said she
did come in and yell at me.  So is it that stupid for
us to believe that they would act like that, when he
said she did it?  It is necessary to belittle them
and berate them for the ways their memories have
changed?"  (R., Vol. VIII, pp. 218-219.)

The petitioner argued on direct appeal, and argues here,
that the prosecution maliciously attacked the competence of
defense counsel in closing argument.

The Kansas Supreme Court found, however, that "the prose-
cutor's statements were fair comment on the defense tactic of
suggesting to the jury that the inconsistencies in the testi-

mony of the States's witnesses proved the testimony to be false." Likewise, the court found the prosecutor properly responded to efforts of the defense to discredit as illogical the testimony of Tami Spann, and it concluded the challenged comments "were not outside the wide latitude permitted in discussing the evidence and did not constitute prosecutorial misconduct." *State v. Crum*, 184 P.3d at 227-28.

Habeas corpus relief for prosecutorial misconduct is appropriate when the conduct violates a specific constitutional right or "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

In reviewing a claim of prosecutorial misconduct, the habeas court must consider the entire proceeding, "including the strength of the evidence against the petitioner ... as well as [a]ny cautionary steps-such as instructions to the jury-offered by the court to counteract improper remarks." *Bland v. Sirmons,* 459 F.3d 999, 1024 (10th Cir. 2006)(alteration in original) (internal punctuation omitted). "'[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned.'" *Id.* (alteration in original) (quoting *Darden v. Wainwright,* 477 U.S. 168, 181 (1986)). "[I]nappropriate prosecutorial comments, standing alone, [do] not justify a

11

reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *United States v. Young,* 470 U.S. 1, 11 (1985). Rather, "[t]he ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *Id.*

Having considered the entire record, the court concludes petitioner is not entitled to relief based upon prosecutorial misconduct. While the questions asked by the prosecutor concerning inconsistent testimony by another witness and whether the circumstances of the crime suggested premeditation were not proper, the responses given by the petitioner did not yield any apparent advantage to the prosecution. Likewise, while the defense and prosecution sparred during closing argument, the overall record does not suggest unfair prejudice to the petitioner when weighed in the context of the considerable evidence against him.

**3. Denial of motion to change counsel.**

On June 13, 2005, petitioner filed a pro se motion seeking a change of appointed counsel, because at that time he was financially unable to retain an attorney (R., I, p. 35). For unknown reasons, the motion was not file-stamped until July 18, 2005, and the trial court did not consider the request until a

conference on Monday, August 29, 2005, the day trial began. At that proceeding, petitioner stated that he had spoken to an attorney on the preceding Friday, and stated he was trying to pay the attorney to represent him (R., V., pp. 4-5.) Petitioner stated that retained counsel had agreed to accept the matter if the court would grant a continuance to allow him to prepare for trial. *Id.*

Petitioner sought different representation based upon a claim of a breakdown in communications with appointed counsel; he specifically alleged counsel had failed to spend adequate time with him and to keep him informed on the planned defense. While appointed counsel acknowledged at the conference that he had spent relatively little time with petitioner, he explained that trial preparation involved reviewing reports and contacts with an investigator and with witnesses.

Based upon these statements, the trial court declined to grant a continuance, but it offered to allow retained counsel to participate in the trial along with appointed counsel and then tried to locate the retained counsel. When that effort was unsuccessful, the matter proceeded to trial with the original appointed counsel.

The Kansas Supreme Court upheld the decision of the trial

court, though it expressed concern regarding the delay of one month in considering petitioner's motion for new counsel. The court analyzed the claim under the "'justifiable dissatisfaction' standard" under state law, and also applied the federal standard established in *Wood v. Georgia*, 450 U.S. 261 (1971), requiring a court to inquire when it becomes aware of a possible conflict between an attorney and a defendant charged with a felony. The court cited the fact that the trial court had considered information provided by both petitioner and his attorney, that the information revealed that appointed counsel had prepared for trial and was ready to proceed, and that petitioner's primary complaint was his dissatisfaction with the amount of time counsel had spent with him. The court found that such a complaint, standing alone, does not rise to a conflict of interest, and it determined that petitioner had failed to establish any justifiable dissatisfaction with his appointed counsel. *State v. Crum*, 184 P.3d at 232-33.

The Sixth Amendment guarantees both a right to the effective assistance of counsel, *Strickland v. Washington,* 466 U.S. 668, 686, (1984), and "a correlative right to representation [by counsel] that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271 (1981).

To establish a Sixth Amendment claim based on a conflict of interest, a petitioner must show a genuine conflict of interest that had an adverse impact upon trial counsel's representation. "[A] mere theoretical division of loyalties" is not a sufficient showing. *Mickens v. Taylor*, 535 U.S. 162, 171 (2002); *see also Cuyler v. Sullivan,* 446 U.S. 335, 350 (1980)(the mere possibility of a conflict of interest "is insufficient to impugn a criminal conviction").

Here, the lone complaint raised by the petitioner, namely, limited pretrial contact with his appointed counsel, does not support the existence of a conflict of interest that would require habeas corpus relief. See *Morris v. Slappy,* 461 U.S. 1, 14 (1983)(the Sixth Amendment does not guarantee a "meaningful relationship" between an accused and his counsel)(footnote and citation omitted)).

Next, to the extent petitioner asserts that he was denied the right to retain counsel of his choice, the court concludes petitioner is not entitled to relief.

First, "[t]he constitutional guaranty to be represented by counsel does not confer upon the accused the right to compel the court to appoint such counsel as the accused may choose. On the contrary, the selection of counsel to be appointed for

an accused rests in the sound discretion of the court."
*Tibbett v. Hand,* 294 F.2d 68, 73 (10th Cir. 1961).

And while a defendant has a right to retain counsel of his choice, this right is not absolute and "may not 'be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same.'" *United States v. Gipson,* 693 F.2d 109, 111 (10th Cir. 1982) *cert. denied,* 459 U.S. 1216 (1983)(quoting *United States v. Burton*, 584 F.2d 485, 489 (D.C. Cir. 1978), *cert. denied*, 439 U.S. 1069 (1979)).

In this case, petitioner was appointed counsel based upon his representation that he was financially unable to retain an attorney. The motion he filed in June 2005 sought a change in appointed counsel and did not suggest petitioner sought to retain counsel. Only on the day of the trial did petitioner advise the court that he had secured sufficient funds to retain counsel, and that he had spoken to an attorney only one business day before trial was to commence.

On these facts, the decision to proceed to trial was not unreasonable. Moreover, after it determined that petitioner had no genuine conflict of interest with appointed counsel, the trial court agreed to allow retained counsel to participate in

the trial and made at least some effort to contact that attorney on petitioner's behalf.

While the record shows petitioner was unable to proceed with retained counsel, it is apparent he was represented by appointed counsel who had no conflict of interest and who was prepared to represent him at trial. Given petitioner's late attempt to secure private counsel, and on the present record, the court concludes petitioner was not denied his rights under the Sixth Amendment.

**4. Cumulative error.**

Petitioner alleges the Kansas Supreme Court unreasonably determined the claim that cumulative error deprived him of a fair trial.

The Kansas Supreme Court rejected this claim, finding that under the totality of the circumstances and in view of the strength of the evidence presented, there was no likelihood that any trial errors affected the outcome of the trial. *State v. Crum*, 184 P.3d at 234-35.

In habeas corpus, "[a] cumulative-error analysis aggregates all [constitutional] errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be deter-

mined to be harmless." *Alverson v. Workman*, 595 F.3d 1142, 1162 (10th Cir. 2010)(quoting *Brown v. Sirmons*, 515 F.3d 1072, 1097 (10th Cir.2008))(internal punctuation omitted). A claim of cumulative error is reviewed under the same standard that applies to individual error, that is, whether the error "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Thornburg v. Mullin*, 422 F.3d 1113, 1137 (10th Cir. 2005)(quoting *Donnelly*, 416 U.S. at 643).

Having considered the petitioner's allegations of error, the court agrees petitioner's trial, though not perfect, did not result in an unconstitutional conviction. The Kansas Supreme Court applied the appropriate legal standard and reasonably determined that given the evidence presented, petitioner's trial was not unfair as a result of trial errors.

## Conclusion

For the reasons set forth, the court concludes petitioner is not entitled to habeas corpus relief. The decision of the Kansas Supreme Court is in no way contrary to clearly established federal law and there was no unreasonable determination of the facts in light of the evidence presented. The errors alleged in this matter, while unfortunate, did not render the

trial proceedings fundamentally unfair, and this court finds no basis for habeas corpus relief.

IT IS, THEREFORE, BY THE COURT ORDERED the petition for habeas corpus is dismissed and all relief is denied.

Copies of this Memorandum and Order shall be transmitted to the parties.

**IT IS SO ORDERED**.

Dated at Kansas City, Kansas, this 26th day of August, 2010.

s/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge
